1

2

3

4

5

6              **UNITED STATES DISTRICT COURT**

7                    **DISTRICT OF ARIZONA**

8

9

10

11   BEAR TOOTH MOUNTAIN HOLDINGS LP et )
     al.,                                )
12                                        )
              Appellants,                 )
13                                        )   Case No.      2:13-cv-01734-RCJ
          v.                              )   Adv. No.      2:12-ap-01849-RJH
14                                        )
                                          )   **ORDER AND OPINION**
15   ML MANAGER LLC et al.,               )
                                          )
16            Appellees.                  )
     _____ )
17

18          This is an appeal of an adversary proceeding that arises out of the alleged malfeasance of ML

19   Manager, LLC, a company created under the Confirmation Order in the bankruptcy case of Debtor

20   Mortgages, Ltd.  Fifteen Plaintiffs ("Appellants") sued ML Manager and several of its members and

21   officers (collectively, "ML Manager" or "Appellees") in Arizona state court on state law claims of

22   breach of fiduciary duty, negligence, conversion, fraud, intentional and negligent misrepresentation,

23   civil conspiracy, and breach of the implied covenant of good faith and fair dealing.  Defendant

24   removed under 28 U.S.C. § 1334(b).  The Bankruptcy Court denied Appellants' motion to remand,

25   finding that the claims had a "close nexus" to the bankruptcy case, as required for post-confirmation

26   § 1334(b) jurisdiction under *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194

27   (9th Cir. 2005), because the claims essentially complained of the way the Confirmation Plan was

28   drafted, negotiated, amended, and confirmed; how the exit financing was obtained; how ML

     Manager's board operated; how the troubled real estate assets were liquidated by ML Manager under

1   the Confirmation Plan; and the assertion of agency authority assigned to ML Manager by the

2   Confirmation Plan.  The Bankruptcy Court dismissed all claims except those for fraud and negligent

3   misrepresentation based on claim preclusion, dismissed all claims except that for fraud based on

4   quasi-judicial immunity, and found the fraud claim not to have been pleaded with particularity.  The

5   Bankruptcy Court later dismissed the amended fraud claim with prejudice.

6          Appellants appealed, and Appellees elected to have the appeal heard by this Court rather than

7   the Bankruptcy Appellate Panel.  Appellants asked the Court to certify the case for direct appeal to

8   the Court of Appeals.  The Court granted the motion, but the Court of Appeals exercised its

9   discretion to refuse jurisdiction.  The appeal is now ripe for this Court's determination.  Appellants

10  assign four points of error to the Bankruptcy Court: (1) there is no jurisdiction under § 1334(b); (2)

11  claim preclusion does not bar any of the claims; (3) ML Manager is not entitled to quasi-judicial

12  immunity; and (4) the fraud claim was adequately pled in the First Amended Complaint ("FAC").

13  **I.      POST-CONFIRMATION JURISDICTION**

14         The Bankruptcy Court did not err in finding jurisdiction under § 1334(b).  The Court of

15  Appeals has reiterated that post-confirmation "related-to" bankruptcy jurisdiction exists under the

16  "close nexus" test over "matters 'affecting the "interpretation, implementation, consummation,

17  execution, or administration of the confirmed plan."'" *In re Wilshire Courtyard*, 729 F.3d 1279,

18  1287 (9th Cir. 2013) (quoting *In re Pegasus Gold Corp.*, 394 F.3d at 1194 (quoting *binder v. Price*

19  *Waterhouse & Co. (In re Resorts Int'l Inc.)*, 372 F.3d 154, 166–67 (3rd Cir. 2004))).  The acts

20  complained of here concern ML Manager's execution and administration of the Confirmation Plan,

21  i.e., the liquidation of the assets of Debtor's estate.  Appellants essentially argue that ML Manager

22  was not administering or executing the Confirmation Plan when it engaged in the complained-of acts

23  because the Confirmation Plan did not direct ML Manager's specific actions.  But the detail of the

24  Confirmation Plan's instruction to ML Manager is not relevant, so long as it is clear ML Manager

25  was acting within the scope of the Confirmations Plan, which is not seriously disputed.  An actor

26  does not act outside the scope of a plan simply because a bankruptcy court has given him a wide

27  range of discretion in how he carries out the tasks and objectives listed in the plan.  That is not to say

28  that ML Manager may not have abused that discretion or acted wrongly, but it is to say that

2

1 │ jurisdiction over such claims is supported by § 1334(b).

2 │ **II.     CLAIM PRECLUSION**

3 │       Appellants argue that a recent ruling by the Court of Appeals invalidates the Bankruptcy

4 │ Court's claim preclusion rationale.  The Bankruptcy Court noted that certain claims or issues were

5 │ precluded: (1) ML Manager could charge all investors an equitable portion of the exit financing costs

6 │ and could manage the loans and collateral but could not involuntarily encumber non-consenting

7 │ parties' beneficial interests; (2) Appellants were bound by certain agency agreements with Debtor to

8 │ which ML Manager had succeeded and which could not be revoked because the agencies were

9 │ coupled with an interest; (3) the allocation of exit financing had been approved, affirmed by this

10 │ Court, and found equitably moot by the Court of Appeals; and (4) many previous sales orders had

11 │ been approved by the Bankruptcy Court, affirmed by this Court, and found equitably moot by the

12 │ Court of Appeals.

13 │       Appellants note that the Court of Appeals has reversed as to the agency issue. *See In re*

14 │ *Mortgages, Ltd.*, 771 F.3d 623, 630 (9th Cir. 2014).  The Court of Appeals held that Appellants in

15 │ that case had sufficiently alleged a lack of any signed agency agreements such that the Bankruptcy

16 │ Court erred in dismissing under Bankruptcy Rule 7008(a), but it did not hold that there was in fact no

17 │ agency as a matter of law. *See id.*  It remanded for further proceedings. *See id.* at 632.  Appellants are

18 │ correct that the issue is no longer precluded by virtue of the now-reversed ruling.  However, the issue

19 │ may still be precluded by the other rulings noted above.  Appellants note that the Court of Appeals

20 │ refused to review those rulings as equitably moot and argue that the unavailability of appellate

21 │ review can in some cases undermine the confidence in the correctness of a ruling such that it should

22 │ not be given preclusive effect.  In this case, however, even assuming that the unavailability of

23 │ appellate review due to equitable mootness of the issue weakens the preclusive value of the relevant

24 │ rulings, the Bankruptcy Court ruled on the preclusion issue before the Court of Appeals announced

25 │ that it would not review the issues based on equitable mootness.  The Bankruptcy Court therefore

26 │ cannot have erred in refusing to find claim preclusion, because it did not know when it ruled that the

27 │ underlying issues would be held unreviewable on appeal.  And this Court cannot readdress the

28 │ underlying issues now.  The Court of Appeals has noted in another opinion that despite the equitable

1  mootness issue it would be inequitable to permit Appellants to relitigate the underlying issues of the

2  agency agreements and exit financing. *See In re Mortgages, Ltd.*, 771 F.3d 1211, 1213, 1218 n.5 (9th

3  Cir. 2014).

4  **III.    QUASI-JUDICIAL IMMUNITY**

5          Bankruptcy trustees are entitled to broad immunity from suit when acting within
        the scope of their authority and pursuant to court order.  Additionally, court appointed
6       officers who represent the estate are the functional equivalent of a trustee.

7          . . . .

8          For derived quasi-judicial immunity to apply, the defendants must satisfy the
        following four elements: (1) their acts were within the scope of their authority; (2) the
9       debtor had notice of their proposed acts; (3) they candidly disclosed their proposed acts
        to the bankruptcy court; and (4) the bankruptcy court approved their acts.
10
*In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009) (citations and internal quotation marks omitted).  The
11
Bankruptcy Court did not err in finding these elements to apply.  ML Manager's activities were
12
within the scope of its authority to dispose of assets, the Debtor had notice of the acts (the property
13
sales, exit financing, etc.), and the acts were both disclosed to and approved by the Bankruptcy
14
Court.  As the Bankruptcy Court noted in its dismissal order, Appellants did not contest the latter
15
three elements, but only the first, and the Bankruptcy Court did not err in finding that ML Manager
16
was functionally equivalent to a trustee.
17
**IV.    RULE 9(b)**
18
        The 32-page FAC contains a single claim for fraud. (*See* First Am. Compl. 29, ECF No. 20-
19
1).  The general allegations in the FAC concern various complaints about the internal operations and
20
communications of the board of ML Manager, but nowhere in the FAC is there any allegation of any
21
untrue statement of fact (or concealment) to any Appellant by any Appellee, unknown to the
22
Appellant to be false, and reasonable reliance thereupon by the Appellant to his detriment. *See*
23
*Nielson v. Flashberg*, 419 P.2d 514, 518–19 (Ariz. 1966).  The allegations of fraudulent concealment
24
concern the alleged concealment of certain financial problems of ML Manager in 2010, resulting in
25
ML Manager taking over $1 million in new loans unapproved by the Bankruptcy Court.  Pursuant to
26
a "secret forbearance agreement" with the lender not revealed to the Bankruptcy Court or the
27
beneficiaries of the loans, ultimately cost ML Manager $2.2 million.  ML Manager then conducted
28

"fire sales" on the troubled real estate assets to quickly generate enough money to repay the new principle borrowed from the exit financing lender.

The Court finds that the Bankruptcy Court did not err in ruling that Appellants failed to plead causation, reliance, or damages under Rule 8(a) and that it is therefore not relevant whether they were required to plead those elements under Rule 9(b).  At oral argument in the Bankruptcy Court, Appellees argued that Appellants had not alleged they would have done anything in particular had they known of the additional financing, so they could not show reasonable reliance and causation as opposed to mere speculation.  There is no allegation of what Appellants would have done had they known of the complained of acts by ML Manager or how their failure to take those acts might have caused them damage.  The bankruptcy judge's comment at oral argument that the allegation of reliance in paragraph 151 of the FAC was conclusory under *Iqbal* and *Twombly* was correct. Appellants then pointed the Bankruptcy Court to paragraph 200, which alleges that the concealment prevented Appellants from being able to appose an allocation motion with full knowledge of material facts, implying that they would have done so.  But when pressed by the bankruptcy judge to point out any allegation of resulting damages apart from the conclusory statement of damage in paragraph 206, which includes no figure or even method of calculation, Appellants were unable to do so.  Also, the Bankruptcy Court noted that even in the absence of the forbearance agreement (or if Appellants had knowledge of the forbearance agreement), ML Manager (or the exit financing lender, via foreclosure) would have sold the properties quickly at large losses anyway, because liquidating the assets was ML Manager's entire purpose and the market had crashed, and Appellants had not alleged otherwise in the FAC.

///

///

///

///

///

///

///

///

5

1

**CONCLUSION**

2          IT IS HEREBY ORDERED that the Orders of the Bankruptcy Court are AFFIRMED, and

3     the Clerk shall close the case.

4          IT IS SO ORDERED.

5      Dated this 25th day of June, 2015.

6

7                                                        _____
                                                              ROBERT C. JONES
8                                                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6